Antionette Dozier (SBN 244437)
adozier@wclp.org
Jodie Berger (SBN 124144)
jberger@wclp.org
Rebecca Miller (SBN 317405)
rmiller@wclp.org
Richard Rothschild (SBN 67356)
rrothschild@wclp.org
Robert Newman (SBN 86534)
rnewman@wclp.org
**WESTERN CENTER ON LAW & POVERTY**
3701 Wilshire Blvd., Suite 208
Los Angeles, CA 90010
T: (213) 235-2617
F: (213) 487-0242

Lori Rifkin (SBN 244081)
lrifkin@impactfund.org
Fawn Rajbhandari-Korr (SBN 315888)
fkorr@impactfund.org
Meredith Dixon (SBN 346864)
mdixon@impactfund.org
Megan Flynn (SBN 359394)
mflynn@impactfund.org
**IMPACT FUND**
2080 Addison St., Suite 5
Berkeley, CA 94704
T: (510) 845-3473
F: (510) 845-3654

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KALI RAE PERRONE, ANIKA OKJE ERDMANN-BROWNING, and CYNTHIA DE LA MORA, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BROOKE ROLLINS, Secretary, United States Department of Agriculture, in her official capacity; RUSSELL VOUGHT, Director of the United States Office of Management and Budget, in his official capacity, <br><br> Defendants. | Case No. <br><br> **CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> CLASS ACTION |

## NATURE OF ACTION

1. Food or rent. Food or medicine. Food or transportation. Food for me or food for my children. These are the real-life choices that one in eight people in the United States—including Plaintiffs Kali Rae Perrone, Anika Okje Erdmann-Browning, and Cynthia De La Mora—are now forced to make daily because Defendants are failing to fund their SNAP benefits.

2. Plaintiffs bring this lawsuit on behalf of themselves and a proposed nationwide class of approximately 42 million recipients of federal food benefits who are harmed by Defendants' failure to provide full Supplemental Nutrition Assistance Program ("SNAP") benefits absent a Congressional appropriation. Plaintiffs and the proposed class members are all very low-income individuals who are harmed by Defendants' actions delaying and reducing SNAP payments and creating uncertainty regarding when, if, or for how long they will receive necessary food benefits.

3. Formerly known as the Food Stamp Program, SNAP is the nation's most important and effective anti-hunger program. It is designed to address food insecurity by supplementing the food budgets of low-income households.

4. SNAP is a mandatory payment program, meaning that it is a financial obligation of the federal government that must be paid whether or not Congress appropriates funds through an annual appropriations act or continuing resolution.

5. On October 1, 2025, the federal government shut down after Congress failed to pass an annual budget. The United States Department of Agriculture ("USDA") confirmed the normal distribution of October 2025 SNAP benefits.

6. Three weeks into the shutdown, on October 24, 2025, USDA issued a memorandum to state SNAP agencies informing them that USDA's Food and Nutrition Services ("FNS") was suspending all November 2025 benefit allotments, due to a lapse in federal funding. Departing from decades of precedent, USDA then published a separate announcement the same day that billions of dollars of contingency reserve funds would not be used to provide any SNAP benefits in November. The agency also refused to authorize use of

1   any other funds to continue SNAP benefits without interruption.

2       7.   On November 3, 2025, following emergency relief orders from the District of Massachusetts and the District of Rhode Island directing USDA to use contingency funds to pay November SNAP benefits, USDA decided to release the contingency funds, which will cover approximately half of the November benefits. USDA also determined it would not provide any benefits to new SNAP applicants certified in November.

       8.   Unless this Court orders Secretary Rollins to withdraw USDA's October 24 memorandum and November 3 decision, tens of millions of people will lose subsistence-level food benefits.

       9.   The Food and Nutrition Act requires Defendants to (1) confirm that federal funds are obligated, and (2) direct the states to issue full SNAP benefits for November 2025 and all subsequent months, regardless of whether Congress has passed an appropriations act or continuing resolution.

       10.  Americans should not go hungry because Congress cannot agree on a federal budget when the Food and Nutrition Act guarantees the regular distribution of SNAP benefits.

## JURISDICTION, VENUE, AND RIGHT OF ACTION

       11.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1346 (actions against the United States), and 5 U.S.C. § 702 (providing for judicial review of agency action under the Administrative Procedure Act).

       12.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1) because Plaintiff Perrone resides in the District.

       13.  Plaintiffs' action for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 1361, 2201, and 2202, and by Rule 57 (declaratory relief) and Rule 65 (injunctive relief) of the Federal Rules of Civil Procedure.

       14.  Plaintiffs' action for mandamus is authorized by 28 U.S.C. § 1361.

## PARTIES

       15.  Plaintiff Kali Rae Perrone is a resident of Humboldt County, California. She is

eligible for and receives CalFresh benefits, as SNAP benefits are known in California.

16. Plaintiff Anika Okje Erdmann-Browning is a resident of San Joaquin County, California. She is eligible for and receives CalFresh benefits.

17. Plaintiff Cynthia De La Mora is a resident of Los Angeles County. She is eligible for and receives CalFresh benefits.

18. Defendant Brooke Rollins is the Secretary of Agriculture. As Secretary, she is responsible for all actions taken by USDA, the federal agency responsible for SNAP, and ensuring USDA complies with the laws of the United States. 7 U.S.C. § 2013(a). Secretary Rollins is sued in her official capacity.

19. Defendant Russell Vought is the Director of the Office of Management and Budget. He is responsible for administering the OMB, the federal office charged with assisting the President in meeting policy, budget, management, and regulatory objectives. The OMB oversees the performance of federal agencies and administers the federal budget. Director Vought is sued in his official capacity.

**FACTS**

**USDA Instructions Regarding Issuance of SNAP Benefits
During Government Shutdown**

20. Congress failed to pass a federal budget for Fiscal Year 2026 (October 1, 2025, through September 30, 2026) by September 30, 2025, the last day of the preceding fiscal year. As of the filing of the Complaint, Congress has not passed a federal budget or short-term continuing resolution, and the current government shutdown is poised to become the longest funding lapse in U.S. history.

21. Actual and potential government shutdowns have become increasingly common, threatening normal government operations in 2015, 2019, and 2023. Every time there is an actual or threatened shutdown, millions of households face the possibility that their SNAP benefits will be suspended, causing nationwide food insecurity and potentially leaving them without critical food resources.

22. Last month, on October 24, 2025, USDA issued a memorandum notifying the

1    state SNAP agencies that the Food and Nutrition Service ("FNS") "is suspending all

2    November 2025 benefit allotments until such time as sufficient federal funding is provided, or

3    until FNS directs State agencies otherwise. This suspension is effective November 1, 2025."

4         23.    On October 24, 2025, USDA also made a separate announcement that

5    "[c]ontingency funds are not legally available to cover regular benefits." The announcement

6    further notified states that "[d]espite their willingness, States cannot cover the cost of benefits

7    and be reimbursed."

8         24.    On November 3, 2025, following two federal court orders granting emergency

9    relief, Patrick Penn, Deputy Under Secretary of the Food, Nutrition, and Consumer Services at

10   USDA, stated the agency would obligate the $4.65 billion remaining in the contingency fund

11   for November SNAP benefits "to cover 50% of eligible households' current allotments." He

12   stated that "no funds will remain for new SNAP applicants certified in November[.]"

13        25.    On November 4, 2025, USDA issued a memorandum to the state SNAP

14   agencies stating that, effective November 1, 2025, the Food and Nutrition Service is reducing

15   SNAP maximum allotments to 50% of the November 2025 allotment for existing SNAP

16   households, following the procedure set forth in 7 CFR 271.7. The memorandum further

17   states that new applicants, if determined eligible "and subject to the continued availability of

18   funds" would also be subject to the reduced benefit formula. Under this formula, some

19   households will receive less than 50% of their benefits and others will receive nothing.

20        26.    For Federal Fiscal Year 2025 (October 1, 2024, to September 30, 2025), the net

21   monthly income federal poverty level was $1,704 for a family of two. USDA demographic

22   data shows that 79% of SNAP households include a child, an elderly individual, or a non-

23   elderly individual with a disability. About 39% of SNAP participants are children, 20% are

24   elderly, and 10% are non-elderly individuals with a disability. Twenty-eight percent of SNAP

25   households have earned income but have wages that are so low that they are still eligible for

26   SNAP benefits.

27        27.    Any disruption of SNAP benefits will cause immediate irreparable harm to

28   eligible low-income recipients, many of whom do not have enough money to purchase food. It

will also disrupt sales at the approximately 267,000 SNAP approved retailers, ranging from large supermarkets to mom-and-pop neighborhood stores, costing them billions of dollars.

28. Tens of millions of stranded SNAP participants will overwhelm soup kitchens, food banks, and food distribution centers that are already stretched to capacity. Many, if not most, agencies cannot absorb additional need. They simply will not have enough food to meet the dramatic increase in demand and will need to consider drastic alternatives, such as giving everyone significantly less food or turning away hungry individuals and families.

29. Food insecurity from uncertain or limited access to sufficient food has immediate and long-term negative impacts on physical, mental, and emotional health, causing hunger, reduced food intake, deferral of other basic needs, and increased stress, anxiety, and depression. The impacts on children are particularly stark and long lasting.

30. Unless Defendants are enjoined, the individuals and families legally entitled to SNAP benefits will suffer irreparable injury. There is no adequate remedy at law available that will address these harms.

**Defendants' Failure to Ensure Full and Timely Issuance of SNAP Benefits Will Cause Immediate Harm to the Plaintiffs**

*Plaintiff Kali Rae Perrone*

31. Plaintiff Kali Rae Perrone, her husband, and their three children receive monthly SNAP benefits, known as "CalFresh" in California, on the 10th of the month. She is eligible to receive benefits in November and beyond.

32. Plaintiff Perrone is underemployed and works intermittent shifts as a merchandiser for up to ten hours per week, after her previous job in integrated pest management in the agricultural industry ended due to changes in the industry.

33. Plaintiff Perrone's family is struggling financially. She depends on support from the Women, Infants, & Children (WIC) program to buy approved items for herself and her 8-month-old baby. Other than CalFresh and WIC, they have no money for food. Plaintiff Perrone already depends on monthly food boxes from the local food bank and stocking up on nonperishable items when they are very cheap.

34. Plaintiff Perrone will suffer immediate harm if her SNAP benefits are reduced, delayed, or interrupted.

***Plaintiff Anika Okje Erdmann-Browning***

35. Plaintiff Anika Okje Erdmann-Browning and her husband receive monthly CalFresh benefits on the 4th of the month. She is eligible to receive benefits in November and beyond.

36. Plaintiff Erdmann-Browning is no longer able to work, after the progression of her Multiple Sclerosis left her unable to continue her career in the high-tech industry and as a freelance journalist.

37. After a period of homelessness, Plaintiff Erdmann-Browning and her husband now reside in an RV park. Their limited income is entirely dedicated to monthly rent for the RV site, monthly utility charges, purchasing potable water for drinking and propane for cooking, gas to travel to multiple medical appointments each week, medications, care for two service dogs, and food. Plaintiff Erdmann-Browning cannot rely on food banks because her medical condition prevents her from standing in line or waiting for prolonged periods in her truck and it is not safe for her husband to leave her alone in their trailer. Monthly CalFresh benefits are a reliable and necessary part of their food plan.

38. Plaintiff Erdmann-Browning requires daily medications, some of which must be taken with food. She is not supposed to skip meals. When food is limited, she has to space it out and save small amounts to consume with those medications. When she runs out of food entirely, it compromises her ability to take her medication, exacerbates her Multiple Sclerosis, and further endangers her health.

39. Plaintiff Erdmann-Browning will suffer immediate harm if her SNAP benefits are reduced, delayed, or interrupted.

***Plaintiff Cynthia De La Mora***

40. Plaintiff Cynthia De La Mora and her five children receive monthly CalFresh benefits on the 5th of the month. She is eligible to receive benefits in November and beyond.

41. Plaintiff De La Mora is the In-Home Supportive Services provider for her 14-

7
**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

year-old daughter, who has an intellectual disability. She receives income for that work, as well as additional government benefits and limited monthly child support.

42. Plaintiff De La Mora's family finances are already very strained. She struggles to cover the necessities of rent, utilities, clothing, gas, food, and additional items to care for her 14-year-old daughter and 3-year-old son who has autism. Her car broke down at the end of last year before she paid it off, and now she must pay $850 each month to cover the prior debt and the payment for another car. Lately, she has been unable to pay her electric bill. Plaintiff De La Mora already depends on food pantries, even though the trips are time consuming and the gas required is expensive.

43. Plaintiff De La Mora and her 14-year-old daughter both have health conditions that require special diets. They already struggle to maintain their diets because of their limited food budget and the lack of selection at food pantries. Even with CalFresh, Plaintiff De La Mora regularly skips meals to make sure her children have a full plate and is usually hungry. Her health is suffering.

44. Plaintiff De La Mora will suffer immediate harm if her SNAP benefits are reduced, delayed, or interrupted.

**LEGAL FRAMEWORK**

**Overview of the SNAP Program**

45. The Food Stamp Act of 1964, Pub. L. No. 88-525, 78 Stat. 703, was enacted to promote the general welfare and safeguard the health and well-being of the Nation's population by helping low-income households access nutrition and alleviate hunger and malnutrition. In 2008, the federal Food Stamp Program was renamed the Supplemental Nutrition Assistance Program and the Food Stamp Act was renamed the Food and Nutrition Act of 2008. *See* Pub. L. No. 110-246, §§ 4001-02.

46. The Food and Nutrition Act of 2008, 7 U.S.C. § 2011 *et seq.* ("the Act"), declares the policy of Congress "to safeguard the health and well-being of the Nation's population by raising nutrition levels among low-income households" through a supplemental nutrition assistance program that "will permit low-income households to obtain a more

nutritious diet through normal channels of trade by increasing food purchasing power for all eligible households who apply for participation." 7 U.S.C. § 2011.

47. The Act establishes that "[a]ssistance under this program *shall be* furnished to all eligible households who make application for such participation." *Id.* § 2014(a) (emphasis added).

48. The Act requires USDA to ensure that the states comply with their responsibilities under the Act, including timely issuance of each month's benefits to eligible SNAP households. *Id.* § 2020(g).

49. The Act further requires that the states "shall provide timely, accurate, and fair service to applicants for, and participants in, the supplemental nutrition assistance program." *Id.* § 2020(e)(2)(B)(i).

50. Applicants who meet requirements, including limited income and financial resources, receive dedicated funds to purchase food. 7 U.S.C. §§ 2014, 2017. To be eligible for SNAP benefits, an applicant's net countable income generally must be below the federal poverty level, *id.* § 2014(c)(1), and the household must meet other eligibility requirements set forth in the Food and Nutrition Act. *Id.* § 2014.

51. The SNAP benefit allotment formula is based on the premise that SNAP recipients spend 30 percent of their net income on food. 7 U.S.C. § 2017(a); 7 C.F.R. § 273.10(e)(2)(ii)(A). Very poor households receive larger benefits than households closer to the poverty line because they need more help affording an adequate diet. As of October 2025, the maximum allotment for a family of two in the 48 contiguous states and the District of Columbia is $546.

52. SNAP state agencies apply federal standards to "certify" eligible applicants for SNAP participation and provide them with an Electronic Benefit Transfer ("EBT") card that can only be used to purchase food that meets SNAP requirements at one of the nation's over 266,000 authorized SNAP retailers. The amount of benefits an applicant receives is called an "allotment."

53. Each month, state SNAP agencies, acting through EBT vendors and on behalf

of USDA, load the full value of each household's monthly allotment into the household's account, which the household accesses by using its EBT card to purchase food from authorized retailers in the same way one uses a debit card. *See* 7 U.S.C. §§ 2016, 2018. States can make the benefits available to all participating households on the first day of each month or issue them over a longer period of time during the month. *Id*. § 2016(g).

54. From the perspective of the recipient, the EBT system operates similarly to other debit card systems. When SNAP recipients use their EBT cards at a retailer's point of sale machine, an electronic message goes to a computer for approval. If the purchase is approved, the customer's EBT account is immediately debited and the retailer's account gets credited. At the end of the business day, transactions are totaled and the funds are moved. The retailer will usually receive money from an EBT transaction within two banking days. 7 C.F.R. § 274.8(a)(3).

55. The Act requires that Secretary Rollins and Director Vought take the necessary steps to ensure that SNAP benefits issue in November 2025 and all subsequent months. Defendants' ongoing failure to undertake these actions violates the Act.

## CLASS ALLEGATIONS

56. Plaintiffs Perrone, Erdmann-Browning, and De La Mora bring this action under Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure on behalf of themselves and on behalf of a proposed Class defined as:

> All households who are or will be certified to receive Supplemental Nutrition Assistance Program benefits for November 2025 and subsequent months in the 50 states, the District of Columbia, Guam, and the Virgin Islands.

57. The Class is so numerous that joinder of all class members is impracticable. There are approximately 42 million SNAP recipients each month in the United States and nearly 5.5 million SNAP recipients in California alone.

58. Questions of law or fact common to the Class will drive the resolution of this action. Specifically, Plaintiffs' and the proposed Class's claims in this Action all turn on the common question of whether Defendants have failed to meet their statutory obligation to provide SNAP benefits under federal law and regulations.

59. The named Plaintiffs' claims are typical of the claims of the Class. Plaintiffs Perrone, Erdmann-Browning, and De La Mora are current SNAP recipients certified to receive benefits in November and thereafter. USDA's suspension of benefits leaves the named Plaintiffs and all members of the proposed Class without access to monthly benefits that the state agencies found them eligible to receive.

60. The named Plaintiffs will fairly and adequately protect the interests of the proposed Class. The named Plaintiffs will advance the claims of absent class members, as well as their own. The named Plaintiffs are not aware of any conflicts of interest that would render them inadequate class representatives.

61. The named Plaintiffs and the proposed Class are represented by the Western Center on Law and Poverty and the Impact Fund, whose attorneys are experienced in class action litigation and will adequately represent the Class. Western Center has litigated numerous public benefits class actions in state and federal courts throughout California. The Impact Fund has litigated numerous class action cases in this District and other federal courts.

62. Certification under Rule 23(b)(2) is appropriate because Defendants have acted or failed to act with regard to the proposed Class as a whole by suspending SNAP benefits nationwide until Congress appropriates funds by approving either an annual budget for Fiscal Year 2026 or a short-term continuing resolution. Declaratory and/or injunctive relief is appropriate and applies to the proposed class as a whole.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

(Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2) for Failure to Adhere to the Food and Nutrition Act of 2008, 7 U.S.C. § 2011, *et seq.*,

Against Defendant Rollins)

63. Plaintiffs incorporate each and every allegation of the preceding paragraphs as if fully set herein.

64. Under the Administrative Procedure Act, this Court has authority to review and to hold unlawful and set aside agency actions that are found to be "arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C).

65. Defendant Rollins has a duty to furnish SNAP benefits to "all eligible households who make applications for such participation." 7 U.S.C. § 2014(a).

66. Instead, Defendant Rollins authorized FNS to "suspend[] all November 2025 benefit allotments until such time as sufficient federal funding is provided, or until FNS directs State agencies otherwise," effective November 1, 2025.

67. Defendant Rollins subsequently authorized use of contingency funds, but no other funds, to provide 50% of the benefits normally allotted to existing SNAP households in November and no benefits at all to households newly certified as eligible in November 2025.

68. Any action that disrupts timely issuance of SNAP benefits violates the Food and Nutrition Act, which requires Defendant Rollins to ensure that states timely issue SNAP benefits. 7 U.S.C. § 2020(g).

69. USDA's decision to obligate funds to cover only half of the benefits for current SNAP households for November 2025 and suspend SNAP benefit allotments for all newly certified households effective November 1, 2025, is a final agency action

70. USDA's decision to reduce November 2025 benefits for current SNAP households and suspend all other SNAP benefits is arbitrary and capricious and in excess of its statutory authority.

**SECOND CLAIM FOR RELIEF**

(Violation of the Administrative Procedure Act, 5 U.S.C. § 706(1) for Unlawful Withholding and/or Unreasonable Delay of Agency Action, 7 U.S.C. § 2011, *et seq.*, Against Defendants Rollins and Vought)

71. Plaintiffs incorporate each and every allegation of the preceding paragraphs as if fully set herein.

72. Under the Administrative Procedure Act, this Court has authority to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

73. Defendant Rollins has a duty to furnish SNAP benefits to "all eligible

households who make applications for such participation." 7 U.S.C. § 2014(a).

74. Defendant Vought has a duty to obligate the necessary funds to provide such benefits.

75. Instead, Defendant Rollins authorized FNS to "suspend[] all November 2025 benefit allotments until such time as sufficient federal funding is provided, or until FNS directs State agencies otherwise," effective November 1, 2025.

76. As of the filing of this Complaint, Defendants have failed to fulfill their statutory duty to provide SNAP benefits to all eligible households.

## THIRD CLAIM FOR RELIEF

(Writ of Mandamus Pursuant to 28 U.S.C. § 1361

Against Defendants Rollins and Vought)

77. Plaintiffs incorporate each and every allegation of the preceding paragraphs as if fully set herein.

78. Under 28 U.S.C. § 1361, this Court has original jurisdiction over mandamus actions to compel an officer or employee of the United States or any agency to perform a duty owed to the Plaintiffs.

79. The Food and Nutrition Act gives the Secretary of Agriculture a ministerial, nondiscretionary duty to instruct states to continue sending benefits data to EBT vendors, or otherwise inform states that SNAP benefits may issue, so long as Congress has not enacted legislation limiting benefits. *See* 7 U.S.C. §§ 2016(g)(2), 2017(c)(1), 2020(e)(3), (4), (9).

80. The Office of Management and Budget is required to "apportion" funds before they can be spent, including annual appropriations, contingency reserves, or other federal funds. 31 U.S.C. § 1512. An apportionment is a distribution that designates the time periods during which funds may be obligated, the activities for which they may be spent, or both. *Id.* § 1512(b)(1).

81. Pursuant to 31 U.S.C. § 1511(a)(3) and § 1512(a), the Office of Management and Budget has the authority to make obligations by contract before appropriations. No federal official may allow federal funds to be obligated outside the bounds of an

1    apportionment. 31 U.S.C. § 1517(a)(1).

2    82.    Defendant Vought has a ministerial duty under the Food and Nutrition Act and the Congressional Budget and Impoundment Control Act of 1974 (Pub. L. No. 93–344, 88 Stat. 297), and the Budget and Accounting Act of 1921 as amended (Pub. L. No. 67-13, 42 Stat. 20, codified at 31 U.S.C. § 1512) to apportion federal funds for SNAP benefits for November 2025 and beyond, and ensure USDA obligates all necessary funds to provide benefits every month, including November 2025 and beyond, even in the absence of an annual appropriations act or continuing resolution, as those funds have been obligated by the Food and Nutrition Act.

83.    Defendant Rollins has a ministerial duty under the Food and Nutrition Act to instruct states to continue sending benefits data to EBT vendors, or otherwise inform states that SNAP benefits may issue, even when Congress has not included the funds in an annual appropriation act.

84.    On October 28, 2025, Plaintiffs issued a demand letter to Defendants to obligate November 2025 and ongoing SNAP benefits since SNAP is a mandatory program with statutorily obligated funding that is not dependent upon annual appropriations.

85.    On November 3, 2025, Jason Altabet, an attorney for the Department of Justice responded that "the [USDA] is fully expending the Contingency Fund to make a partial payment of November SNAP benefits." He attached the government responses to the two district court emergency orders and a declaration filed in those cases, explaining USDA's compliance. He concluded, "We understand this as addressing your letter."

86.    On November 3, 2025, Plaintiffs' counsel provided notice to Pam Johann, Chief of the Civil Division for the US Attorneys, Northern District of California of the planned filing of this complaint on November 4, 2025, along with a Motion to Relate the present case with *Erdmann-Browning v. Vilsack*, No. 4:23-cv-04678-JST.

87.    On November 4, 2025, Plaintiffs' counsel met with Mr. Altabet and his colleague to discuss the Plaintiffs' demands upon the Defendants and requested relief. Defendants did not indicate that they were willing to meet Plaintiffs' demands.

88. As of the filing of this Complaint, Defendants Rollins and Vought have refused to carry out their ministerial duties.

89. Plaintiffs are beneficially interested in the outcome of the proceeding and have no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF**

(Declaratory Relief Pursuant to 28 U.S.C. §§ 2201-2202

Against Defendants Rollins and Vought)

90. Plaintiffs incorporate each and every allegation of the preceding paragraphs as if fully set herein.

91. Plaintiffs incorporate each and every allegation of the preceding paragraphs as if fully set herein.

92. Under 28 U.S.C. § 2201 and § 2202, this Court has authority to issue a judgment declaring the rights of the parties, and any necessary or proper relief based on that judgment.

93. An actual controversy exists between Plaintiffs and the proposed Class and the Defendants. Defendants' actions threaten the SNAP benefits that Plaintiffs and the proposed Class are entitled to receive. Defendants' actions contradict the Food and Nutrition Act, 7 U.S.C. § 2011 *et seq.*, and therefore violate the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (C).

94. Defendants contend that their actions are lawful.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

i. Take jurisdiction of this case;

ii. Certify this action as a class action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure;

iii. Issue a temporary restraining order and then preliminarily and permanently enjoin Defendants from interfering with Plaintiffs' entitlement to timely receive and redeem SNAP benefits as established by the Food and Nutrition

Act, 7 U.S.C. § 2011 *et seq.*;

 iv. Issue a writ of mandamus directing Defendant Vought to apportion the necessary funds to fulfill USDA's SNAP obligations for November 2025 and all subsequent months in the absence of an appropriation act or continuing resolution, and directing Defendant Rollins to instruct state SNAP agencies to issue such benefits;

 v. Declare that Defendants' policies and practices of disrupting Plaintiffs' ability to rely upon the timely receipt of SNAP benefits in the absence of an appropriation act, by de-authorizing retailers, or through other means violates the Food and Nutrition Act, 7 U.S.C. § 2011 *et seq.*, and therefore the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (C).

 vi. Declare that SNAP benefits are an enforceable obligation that must be issued to eligible households without regard for congressional approval of funds;

 vii. Award Plaintiffs their litigation costs and reasonable attorneys' fees, as appropriate; and

 viii. Grant such other and further relief as the Court may deem just and proper.

Dated: November 4, 2025

WESTERN CENTER ON LAW & POVERTY
IMPACT FUND

By: _____
   Lori Rifkin

Antionette Dozier
Jodie Berger
Rebecca Miller
Richard Rothschild
Robert Newman
WESTERN CENTER ON LAW & POVERTY

Lori Rifkin
Fawn Rajbhandari-Korr
Meredith Dixon
Megan Flynn
IMPACT FUND

*Attorneys for Plaintiffs*

16
**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**