Antionette Dozier (SBN 244437)
adozier@wclp.org
Jodie Berger (SBN 124144)
jberger@wclp.org
Rebecca Miller (SBN 317405)
rmiller@wclp.org
Richard Rothschild (SBN 67356)
rrothschild@wclp.org
Robert Newman (SBN 86534)
rnewman@wclp.org
**WESTERN CENTER ON LAW & POVERTY**
3701 Wilshire Blvd., Suite 208
Los Angeles, CA 90010
T: (213) 235-2617
F: (213) 487-0242

Lori Rifkin (SBN 244081)
lrifkin@impactfund.org
Fawn Rajbhandari-Korr (SBN 315888)
fkorr@impactfund.org
Meredith Dixon (SBN 346864)
mdixon@impactfund.org
Megan Flynn (SBN 359394)
mflynn@impactfund.org
**IMPACT FUND**
2080 Addison St., Suite 5
Berkeley, CA 94704
T: (510) 845-3473
F: (510) 845-3654

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KALI RAE PERRONE, ANIKA OKJE ERDMANN-BROWNING and CYNTHIA DE LA MORA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BROOKE ROLLINS, Secretary, United States Department of Agriculture, in her official capacity; RUSSELL VOUGHT, Director of the United States Office of Management and Budget, in his official capacity,<br><br>Defendants. | Case No.: 3:25-cv-09508-AMO<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO EX PARTE APPLICATION FOR TRO AND OSC RE: PRELIMINARY INJUNCTION**<br><br>CLASS ACTION<br><br>Hearing Date: November 10, 2025<br>Time: 2:00 p.m.<br><br>Action filed: November 4, 2025 |

The Supplemental Nutrition Assistance Program (SNAP) is a mandatory payment program that guarantees food assistance to all eligible households, even during a lapse in annual appropriations. Defendants' attempt to minimize this obligation mischaracterizes both the law and the human reality it protects.

The Food and Nutrition Act is clear: "To alleviate such hunger and malnutrition, a supplemental nutrition assistance program is herein authorized" and "[a]ssistance under this program shall be furnished to all eligible households who make application for such participation." 7 U.S.C. §§ 2011, 2014(a). The Act repeats this mandate throughout. *See also id*. §§ 2020(b) (improperly denied benefits "shall" be promptly restore), 2020(e)(3) (applications "shall" be processed in 30 days), 2020(e)(9) (expedited benefits "shall" be issued within 7 days). Defendants do not identify any statutory language limiting SNAP's mandatory nature; nothing in sections 2013(a) or 2027 limit this mandatory language or "cabin" the guarantee of 2014(a). Moreover, the plain language of section 2027(b) does not allow Defendants to eliminate benefits when Congress fails to make any specific annual appropriation.

Statutes governing budget procedures confirm that SNAP does not depend on annual appropriations. Under 2 U.S.C. § 622(9)(B), the food stamp program is explicitly identified as "an entitlement authority." And 2 U.S.C. § 900(c)(8)(C) defines "direct spending" as including budget authority provided by laws other than appropriations acts, entitlement authority, and specifically SNAP. These provisions reinforce Congressional intent to make SNAP a guarantee that no eligible family will go hungry, even during a lapse in annual appropriations.

Defendants' actions to delay, limit, and suspend mandatory SNAP benefits during the government shutdown are inflicting grave harm and violate the Administrative Procedure Act. Plaintiffs' Ex Parte Application for Temporary Restraining Order should be granted because Plaintiffs continue to experience irreparable harm and because they have shown a likelihood of success on the merits.

//

//

//

1

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO EX PARTE APPLICATION FOR TRO AND OSC RE: PRELIMINARY INJUNCTION**
Case No. 3:25-cv-09508-AMO

# ARGUMENT

**I.     Plaintiffs continue to experience irreparable harm.**

Defendants dismiss the ongoing irreparable harm Plaintiffs are experiencing in a single sentence implying they have addressed the problem: "[E]arlier this week, USDA issued guidance and reduced maximum allotment tables to allow States to fund partial November SNAP allotments."  Defs. Opp'n to TRO App. 13, ECF No. 18, p. 13. They ignore the increased chaos that USDA created over the past week for SNAP recipients and its immediate and dire consequences. Declaration of Jodie Berger in Support of Ex Parte Application for Temporary Restraining Order, ECF No. 10 at 139, Exh. 14 ¶ 7 (Declaration of Plaintiff Cynthia De La Mora) ("A delay in CalFresh or not receiving the full amount is going to push us over the edge.  I almost can't think about it because it is so traumatic.").

On November 4 and 5, USDA issued guidance to state SNAP agencies announcing that it would proceed with allotments to fund partial November benefits.[1] Then, on November 7, USDA issued a memorandum notifying all state SNAP agencies that:

> FNS is working towards implementing November 2025 full benefit issuances in compliance with the November 6, 2025, order from the District Court of Rhode Island. Later today, FNS will complete the processes necessary to make funds available to support your subsequent transmittal of full issuance files to your EBT processor.[2]

By the end of the day, however, Defendants had obtained an administrative stay of the District of Rhode Island order from the United States Supreme Court. *Rollins v. Rhode Island State Council of Churches*, No. 25A539, 2025 WL 3124183 (U.S. Nov. 7, 2025).[3]

---

[1] USDA, "Supplemental Nutrition Assistance Program (SNAP) Benefit and Administrative Expense Update for November 2025," Nov. 4, 2025, *avail. at* https://www.fns.usda.gov/snap/benefit-administrative-expense-update-Nov-2025 (last visited Nov. 9, 2025) ("the Food and Nutrition Service (FNS) is reducing SNAP maximum allotments to 50 percent of the eligible household's current allotment for November 2025"); USDA, "REVISED Supplemental Nutrition Assistance Program (SNAP) Benefit and Administrative Expense Update for November 2025," Nov. 5, 2025, *avail. at* https://www.fns.usda.gov/snap/revised-benefit-administrative-expense-update-Nov-2025 (last visited Nov. 10, 2025) ("The maximum allotments are being reduced by 35 percent instead of 50 percent[.]").

[2] USDA, "Updated Supplemental Nutrition Assistance Program (SNAP) November Benefits Issuance," Nov. 7, 2025, *avail. at* https://www.fns.usda.gov/snap/updated-supplemental-nutrition-assistance-program-snap-november-benefit-issuance (last visited Nov. 10, 2025).

[3] Yesterday, November 9, the First Circuit denied the pending motion to stay.  *Rhode Island State Council of Churches v. Rollins*, No. 25-2089 (1st Cir. Nov. 9, 2025). The Supreme Court's

2

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO EX PARTE APPLICATION FOR TRO AND OSC RE: PRELIMINARY INJUNCTION**
Case No. 3:25-cv-09508-AMO

1    On Friday, before the stay had been issued, California and at least seven other states had begun distributing full November benefits.[4] As a result, Plaintiff Anika Okje Erdmann-Browning, who receives her benefits on the 4th day of the month, and Plaintiff Cynthia De La Mora, whose receives hers on the 5th day, received their November benefits. Berger Decl., ECF No. 10 at 130, Exh. 13 ¶ 4 (Declaration of Plaintiff Anika Okje Erdmann-Browning); *id*. at 138, Exh. 14 ¶ 5 (De La Mora Decl.). Plaintiff Kali Rae Perrone receives her benefits on the 10th day of the month and because of USDA's November 8 memorandum, it is unclear whether she will receive them. Berger Decl., ECF No. 10 at 125, Exh. 12 ¶ 5 (Declaration of Plaintiff Kali Rae Perrone).

On Saturday, November 8, USDA issued a memorandum announcing that all state SNAP agencies that "sent full SNAP payment files for November" had taken "unauthorized action" and "must immediately undo any steps taken to issue full SNAP benefits for November 2025," without saying what that will entail.[5] USDA's actions over the past week have sowed additional chaos and uncertainty, continuing the harm identified in Plaintiffs' Application.[6]

**II.    Plaintiffs have demonstrated that they are likely to succeed on the merits.**

   **A.  Sections 2013(a) and 2027 do not limit the mandatory language of the Food and Nutrition Act, nor do they allow for the suspension of benefits during an appropriations lapse.**

Defendants claim that 7 U.S.C. 2013(a)(1)'s use of the phrase "[s]ubject to the availability of funds appropriated under section 2027" means that SNAP cannot operate without an annual appropriation from Congress. Defendants also repeatedly state that SNAP allotments

---

administrative stay will terminate forty-eight hours later on Tuesday, November 11. *Rollins*, 2025 WL 3124183, at *1.

[4] Alissa Higham, Newsweek, "SNAP Benefits Tracker: States That Have Paid SNAP Benefits in November So Far," Nov. 7, 2025, *avail. at* https://www.newsweek.com/snap-tracker-states-that-have-paid-benefits-november-11010336 (last visited Nov. 10, 2025) ("As of November 7, the following states have confirmed that SNAP benefits have been distributed: Alaska, California, Illinois, Louisiana, Nevada, Oregon, Vermon, Wisconsin.").

[5] USDA, "Updated Supplemental Nutrition Assistance Program (SNAP) November Benefits Issuance," Nov. 8, 2025, *avail. at* https://www.fns.usda.gov/snap/updated-supplemental-nutrition-assistance-program-snap-november-benefit-issuance11-8 (last visited Nov. 10, 2025).

[6] Early Monday morning, November 10, 2025, the District Court of Massachusetts granted a TRO staying Defendant's November 8 memo and scheduling a hearing for today. *Commonwealth of Masschusetts v. United States Department of Agriculture,* No. 1:25-cv-13165-IT (D. Mass. Nov. 10, 2025), at ECF No. 83.

and benefits are subject to appropriations. *See, e.g.*, Defs. Opp'n to TRO App., ECF No. 18, pp. 1, 2, 6, 7. These claims are incorrect, and Defendants do not point to anything in the Food and Nutrition Act that specifically limits section 2014(a)'s obligation-creating language.

Defendants do not and cannot identify any provision of the Food and Nutrition Act that makes SNAP benefits or allotments contingent on specific and discretionary annual appropriations. Defendants reference the past use of annual appropriations and continuing resolutions to fund SNAP as evidence that such discretionary funding is required by the statute. Defs. Opp'n to TRO App. 7 ECF No. 18. The fact that Congress has funded SNAP allotments via annual appropriations does not change the statutory language or SNAP's status as a mandatory payment program, as discussed below in Section B. Even for mandatory spending programs, annual enactment of appropriations provide Congress an opportunity to further specify or make adjustments to programs that are funded therein.[7]

When they turn to the statute, Defendants attempt to support their claim by stringing together quotes from two separate sections: 2013(a) and 2014(a). But this demonstrates the opposite: that Congress knew how to limit or cap the mandatory obligation language of section 2014 and chose not to. *Compare* 7 U.S.C. § 2013(a) ("Subject to the availability of funds appropriated under section 2027 of this title, . . . .") *with id.* § 2014(a) (containing no such language).

Defendants' argument that section 2013(a) and its use of the phrase "subject to the availability of funds appropriated" "cabins" the entire program similarly fails. Defs. Opp'n to TRO App. 16 ECF No. 18. First, it ignores section 2011, which comes earlier in the statutory scheme and does not include limiting language when it authorizes the creation of SNAP. 7 U.S.C. § 2011 ("To alleviate such hunger and malnutrition, a supplemental nutrition assistance program is herein authorized which will permit low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power for all

---

[7] Tollestrup, Jessica, *Overview of Funding Mechanisms in the Federal Budget Process, and Selected Example*, (Feb. 5, 2021) at 10, available at https://www.congress.gov/crs-product/R44582 (last visited Nov. 10, 2025).

eligible households who apply for participation.") Second, if the appropriations limitation in section 2013(a) cabins the entire Act, it would have been superfluous for Congress to expressly limit later sections to available appropriations or specific dollar amounts. *See, e.g.,* 7 U.S.C. §§ 2031, 3243, 6523, 7717.

Neither does section 2013(a) specify that "benefits" or "allotments" are limited by appropriations, as Defendants claim. Section 2013 is titled "Establishment of supplemental nutrition assistance program" and the heading of the subsection that contains the appropriation language is "Establishment." The full text of section 2013 states that "[s]ubject to the availability of funds appropriated under section 2027 of this title, the Secretary is authorized *to formulate and administer* a supplemental nutrition assistance program." 7 U.S.C. 2013(a)(1) (emphasis added). Important here is the term "formulate and administer," and the absence of the words "benefits" and "allotments."[8]

The only limitation on monthly benefit allotments in the Food and Nutrition Act is section 2027(b). Section 2027(b) requires the Secretary of the USDA to direct state agencies to limit or reduce SNAP allotments when allotments are "in excess of the appropriation for such fiscal year." By its plain language, section 2027 applies only when an annual appropriation is insufficient. It does not apply in the present moment, when the fiscal year has no appropriation at all.

Section 2027(d) also requires the Secretary of the USDA to undertake specific steps to reduce allotments. The Secretary must report to the House and Senate agricultural committees "(1) the basis of the Secretary's determination, (2) the manner in which the allotments will be reduced, and (3) the action that has been taken by the Secretary to reduce the allotments." 7 U.S.C. § 2027(d). Secretary Rollins has not made any attempt comply with subsection (d), further demonstrating that section 2027(b) does not apply to the present situation.

---

[8] For these same reasons, the reference to 7 U.S.C. § 2013 in footnote 7 of *Maine Community Health Options v. United States*, 590 U.S. 296, 313 (2020), is inapposite. *See* Defs. Opp'n to TRO App.13 ECF No. 18. Plaintiffs do not dispute that section 2013 requires an appropriation, but section 2013 does not apply to the legal obligation to furnish monthly benefit allotments.

Congress has used clear language to limit other nutrition programs to specific annual appropriations, such as "subject to the availability of appropriations provided in advance in an appropriations Act specifically for the purpose of carrying out this section[.]" 42 U.S.C. § 1793(b) (funding for school breakfast expansion); *see also id.* § 1786(m)(1) ("Subject to the availability of appropriations provided in advance in an appropriations Act specifically for the purpose of carrying out this section," states should provide fruits and vegetables to participants in the Special Supplemental Nutrition Program for Women, Infants, and Children (WIC)). Congress's failure to similarly qualify SNAP benefits in this manner demonstrates an intent not to make SNAP benefits contingent on specific annual appropriations.

### B. Budgets statutes designate SNAP as entitlement authority not subject to discretionary spending or annual appropriations

As Plaintiffs previously discussed, two Congressional budget statutes expressly distinguish SNAP and its predecessor food stamp program from discretionary statutes requiring annual appropriations.  Pls. TRO App. 17–18 ECF No. 11, citing 2 U.S.C. § 622(9)(B) ("food stamp program" listed as part of the definition of "entitlement authority"); 2 U.S.C. § 900(c)(8)(C) (definition of "direct spending" includes SNAP).

Defendants point out that "entitlement authority" includes both the food stamp program and "the authority to make payments . . . , the budget authority for which is not provided for in advance by appropriation Acts," 2 U.S.C. § 622(9)(A), while "direct spending" is defined to include SNAP as well as "budget authority provided by law other than appropriation Acts[.]" 2 U.S.C. § 900(c)(8); Defs. Opp'n to TRO App. 11–12 ECF No. 18.  Defendants conclude that SNAP's separate listing in the definitions must mean that the program relies entirely on specific annual appropriations. Defendants are mistaken for at least three reasons.

First, Defendants' reasoning is directly contradicted by the statutes themselves.  Section 900(c)(8) defines "direct spending" to include both "entitlement authority" *and* SNAP.  *Id.* §§ 900(c)(8)(B), (C).  By Defendants' logic, to avoid making one of the statutory provisions surplusage, SNAP must not be entitlement authority. But section 622(9)(B) expressly defines "entitlement authority" to include "the food stamp program."

6

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO EX PARTE APPLICATION FOR TRO AND OSC RE: PRELIMINARY INJUNCTION**
Case No. 3:25-cv-09508-AMO

Second, Defendants overlook section 900(c)(7), which defines "discretionary appropriations" as "budgetary resources (*except to fund direct-spending programs*) provided in appropriation Acts." (emphasis added.) As a direct spending program, SNAP cannot be dependent on discretionary appropriations.

Finally, Defendants do not even attempt to explain why—out of the vast universe of federal programs—Congress singled out food stamps and SNAP by name in its budget statutes. Congress did not intend to create a unicorn: a "direct spending" "entitlement program" that depends entirely on a discretionary annual appropriation. No such program exists. The simpler explanation is that the budget statutes align with the language of the Food and Nutrition Act and confirm that Congress intended SNAP benefits to be timely paid, with or without specific annual appropriations.

Defendants also argue that Plaintiffs have not provided any support for the proposition that all forms of "entitlement authority" and "direct spending" are mandatory payment programs. Defs. Opp'n to TRO App. 12 ECF No. 18. A Congressional Research Service report[9] clarifies that: "Mandatory spending (also referred to as "direct spending") . . . usually funds entitlement programs, such as Social Security, Medicare, Medicaid, …and the Supplemental Nutrition Assistance Program." To be absolutely clear, SNAP is considered "appropriated mandatory" spending or an "appropriated entitlement," meaning the authorization statute (here, the Food and Nutrition Act) "establishes a legal obligation to make payments, and the funding in annual appropriations acts is provided as a means to fulfill that legal financial obligation."[10]

### C. The legislative history of 7 U.S.C. § 2027 demonstrates that SNAP evolved into an entitlement program not contingent upon a specific source of congressional funding.

Defendants' assertion that the legislative history of the Food and Nutrition Act "holds no bearing on the current statute" is incorrect. Defs. Opp'n to TRO App. 10 ECF No. 18. The legislative history set forth in Plaintiffs' Application demonstrates Congress's intent to establish a permanent funding obligation ensuring benefits continue uninterrupted, even during lapses in

---

[9] Tollestrup, *Overview of Funding Mechanisms*, at 10.
[10] *Id*. at 13

annual appropriations.

For example, in amending SNAP through the Food Security Act of 1985, the House Agriculture Committee explained its intent to reinforce the ability of SNAP recipients to rely on benefits, stating that the amendment ended "the unfortunate situation of the past few years where . . . the continuation of full food stamp benefits has been uncertain" and recipients were "threatened with delays and reductions pending Congressional approval of supplemental appropriations."[11] The Committee emphasized that any benefit reductions should occur only through "an explicit decision to do so," not because Congress failed to act.[12] In 1990, Congress further confirmed SNAP's entitlement status, enumerating it under 2 U.S.C. § 651, which governs direct spending rather than discretionary annual appropriations..

### III. Plaintiffs' TRO seeks to enforce congressional intent through well-accepted appropriations principles.

Defendants contend, without support, that Plaintiffs ask the Court to violate separation of powers principles and "subvert Congress's authority to appropriate funds by converting an appropriations-based program into a mandatory payment program." Defs. Opp'n to TRO App. 14 ECF No. 18. In fact, Plaintiffs seek the opposite: enforcement of Congress's own command in 7 U.S.C. § 2014(a) of the Food and Nutrition Act, which requires that benefits "shall be furnished to all eligible households." Plaintiffs ask the Court to uphold, not disregard, separation of powers principles by directing Defendants to carry out a congressional mandate.

"Appropriations" is a broad term for any allocation of funding for a purpose from a source of funds. While Congress typically enacts annual appropriations for SNAP through budget or Farm Bill legislation, appropriations may also arise directly from statutes that themselves create binding payment obligations. As Defendants acknowledge, 7 U.S.C. § 2027(a) authorizes appropriations "but does not itself appropriate those moneys." Defs. Opp'n to TRO App. 6–7 ECF. No. 18. Self-appropriating language is not required. The Supreme Court has held that under the Appropriations Clause, an appropriation is any law that authorizes

---

[11] H.R. Rep. No. 99-271, 166, reprinted in 1985 U.S. Code Cong. & Admin. News 1270.
[12] *Id*.

expenditures from a specified source of public money for designated purposes. *CFPB v. Community Financial Services. Assn. of America, Ltd.*, 601 U.S. 416, 425 (2024). The Court explained that appropriations "need only identify a source of public funds and authorize the expenditure of those funds for designated purposes to satisfy the Appropriations Clause." *Id*.

Here, 7 U.S.C. § 2011 sets forth the purpose of the appropriation "to alleviate hunger and malnutrition" and 7 U.S.C. § 2019 provides that the benefits redemptions shall be paid from the U.S. Treasury. 7 U.S.C. § 2257, the Transfer Authority granted to Defendants, provides an additional means of accessing necessary funds. Thus, regardless of whether there is a specific annual appropriation of discretionary funds from Congress, the Food and Nutrition Act contains all the necessary direction to qualify SNAP benefits as payments pursuant to "an appropriation" for purposes of satisfying the Appropriations Clause.

Defendant's reliance on 7 U.S.C. § 2027(b) to justify reducing or suspending benefits during a lapse in appropriations is misplaced. Section 2027(b) addresses instances where the amount appropriated is insufficient to meet the program's needs. In a government shutdown, however, no annual appropriation exists for the Secretary to compare against projected needs, rendering Section 2027 inapplicable. Given the totality of the statute, it is arbitrary and capricious for Defendants to read section 2027(b) as requiring them to suspend benefits where no appropriation has been enacted at all. Interpreting the statute otherwise will permit political gridlock to supersede Congress's creation of a mandatory entitlement and defeat the very stability that Congress sought to ensure.

Rather, 7 U.S.C. § 2014(a) compels the Secretary employ its Transfer Authority under 7 U.S.C. § 2257 to transfer funds into SNAP from available sources, including but not limited to Section 32 funds. USDA may lawfully transfer funds under 7 U.S.C. § 2257 and faces no conflict in its legal obligations. Its refusal to do so is arbitrary and capricious, and Defendants' failure to comply with their statutory obligations violates the APA. Plaintiffs are likely to prevail on the merits of their claims.

The Court should therefore direct Defendants to immediately continue issuing full SNAP benefits to all eligible households without interruption during the lapse in appropriations and to

ensure compliance with the statutory mandate that assistance shall be furnished to all eligible households who apply for participation, as required by 7 U.S.C. § 2014(a).[13]

## CONCLUSION

Accordingly, Plaintiffs ask the Court to order Defendants to immediately restore and maintain full monthly SNAP benefit payments as required by the Food and Nutrition Act.

Dated: November 10, 2025                                          Respectfully submitted,

 

_____
Fawn Rajbhandari-Korr
*Attorney for Plaintiffs*

---

[13] Plaintiffs' position on any portions of Defendants' Opposition not specifically identified herein is contained in Plaintiffs' Ex Parte Application for Temporary Restraining Order, ECF No. 11.

10

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO EX PARTE APPLICATION FOR TRO AND OSC RE: PRELIMINARY INJUNCTION**
Case No. 3:25-cv-09508-AMO